# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

GREGORY WELLS,
Plaintiff

vs

COMMISSIONER OF
SOCIAL SECURITY,
Defendant

Case No. 1:08-cv-148
(Beckwith, J.; Hogan, M.J.)

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and Supplemental Security Income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 6), and the Commissioner's response in opposition. (Doc. 9).

## PROCEDURAL BACKGROUND

Plaintiff was born in 1959 and was 47 years old at the time of the ALJ's decision. Plaintiff has a high school education and past work experience as a truck driver. Plaintiff filed applications for SSI and DIB in December 2003, alleging an onset of disability of March 10, 2003, due to degenerative disc disease and chronic back pain. Plaintiff's applications were denied initially and upon reconsideration. Plaintiff then requested and was granted a de novo

hearing before an administrative law judge (ALJ). Plaintiff, who was represented by counsel, appeared at two hearings before ALJ James Knapp. At the first hearing, a Vocational Expert (VE) appeared and testified. At the second hearing, a medical expert appeared and testified.

On August 16, 2006, the ALJ issued a decision denying plaintiff's DIB and SSI applications. The ALJ determined that plaintiff suffers from severe lumbar degenerative disc disease, but that such impairment does not alone or in combination with any other impairments meet or equal the Listing of Impairments. (Tr. 30). According to the ALJ, plaintiff retains the residual functional capacity (RFC) for a reduced range of light work: he can lift no more than 10 pounds frequently and no more than 20 pounds occasionally; he can perform a job that will allow him to alternate between sitting and standing at 30-minute intervals throughout the day; he can do no more than occasional crouching, stooping at below waist level, kneeling, or climbing of stairs; he cannot crawl or climb ladders or scaffolds; and he cannot work at unprotected heights, around moving machinery, or where his body would be exposed to significant vibration. (Tr. 31). The ALJ also determined that plaintiff's subjective allegations lack credibility to the extent they purport to describe a condition of disability within the meaning of the Social Security Act and Regulations. (Tr. 30). The ALJ determined that plaintiff cannot perform his past relevant work, but based on the vocational expert's testimony, could perform other jobs that exist in significant numbers in the national economy such as a small parts assembler, charge account clerk, lens inserter, toy stuffer, electronics worker, molding machine tender, mail clerk, and copy machine operator. (Tr. 31). Consequently, the ALJ concluded that plaintiff is not disabled under the Act and therefore not entitled to disability benefits. The Appeals Council denied plaintiff's request for review, making the decision of the ALJ the final administrative decision of the

Commissioner.

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for disability insurance benefits, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(i), 423. Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is

3

dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 20 C.F.R. § 416.905.

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461

4

U.S. 957 (1983).

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Born v. Secretary of Health and Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v. Richardson*, 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999); *Born*, 923 F.2d at 1173; *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). *See also Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984)(per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner*, 587 F.2d at 323. *See also Cole v. Secretary of Health and Human Services*, 820 F.2d 768, 771 (6th Cir. 1987).

Pain alone, if the result of a medical impairment, may be severe enough to constitute disability. *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). In order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of pain alleged by plaintiff; or (2) whether the underlying medical

5

impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Duncan v. Secretary of H.H.S.*, 801 F.2d 847, 852-53 (6th Cir. 1986). *See also Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Jones v. Secretary of H.H.S.*, 945 F.2d 1365, 1369 (6th Cir. 1991). This test, however, "does not require . . . 'objective evidence of the pain itself.'" *Duncan*, 801 F.2d at 853. Where a complaint of pain is not fully supported by objective medical findings, the Commissioner should consider the frequency and duration of pain, as well as other precipitating factors including the effect of the pain upon plaintiff's activities, the effect of plaintiff's medications and other treatments for pain, and the recorded observations of pain by plaintiff's physicians. *Felisky*, 35 F.3d at 1039-40.

Where the medical evidence is consistent, and supports plaintiff's complaints of the existence and severity of pain, the ALJ may not discredit plaintiff's testimony and deny benefits. *King v. Heckler*, 742 F.2d 968, 975 (6th Cir. 1984). Where, however, the medical evidence conflicts, and there is substantial evidence supporting and opposing a finding of disability, the Commissioner's resolution of the conflict will not be disturbed by the Court. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam). In either event, the ALJ must articulate, on the record, his evaluation of the evidence and how it relates to the factors listed above. *Felisky*, 35 F.3d at 1039-41.

In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Kirk*, 667 F.2d at 538. "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky*, 35 F.3d at 1036. The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony

must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985)(citing *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)).

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 111 S. Ct. 2157, 2163 (1991).

Where the Commissioner has erroneously determined that an individual is not disabled at steps one through four of the sequential evaluation, remand is often appropriate so that the sequential evaluation may be continued. *DeGrande v. Secretary of H.H.S.*, 892 F.2d 1043 (6th Cir. 1990) (unpublished), 1990 WL 94. Remand is also appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). Remand ordered after a hearing on the merits and in connection with an entry of judgment does not require a finding that the Commissioner had good cause for failure to present evidence at the prior administrative hearing. *Faucher*, 17 F.3d at 173.

Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher*, 17 F.3d at 176. *See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 782 (6th Cir. 1987). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so

7

that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176. *See also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

## OPINION

The pertinent medical findings and opinions have been adequately summarized by the parties in their briefs (Doc. 6 at 2-3; Doc. 9 at 3-9) and will not be repeated here. Where applicable, the Court shall identify the medical evidence relevant to its decision.

Plaintiff assigns four errors in this case. First, plaintiff contends the ALJ erred by giving the greatest weight to the opinion of Dr. Lorber, the medical advisor who testified at the second hearing. Second, plaintiff argues the ALJ erred in failing to find plaintiff entitled to a closed period of disability. Third, plaintiff argues the ALJ erred in assessing plaintiff's credibility and subjective complaints of pain. Fourth, plaintiff asserts the ALJ posed an improper hypothetical question to the vocational expert. For the reasons that follow, the Court finds the ALJ's decision is supported by substantial evidence and should be affirmed.

Plaintiff's first assignment of error challenges the ALJ's decision to give the most weight to the opinion of Dr. Lorber, the board certified orthopedic surgeon who testified at the second hearing as a medical advisor. The ALJ essentially adopted the RFC opinion of Dr. Lorber with the exception of Dr. Lorber's lifting restrictions. (Tr. 26). Plaintiff alleges three errors in this regard.

First, plaintiff claims the ALJ should have noted that Dr. Lorber "does primarily defense medical evaluations." (Doc. 6 at 3, citing Dr. Lorber's curriculum vitae at Tr. 68). Plaintiff does

not contend that Dr. Lorber does not qualify as an expert[1], but suggests that his previous employment experiences show a bias against workers and claimants.

Plaintiff fails to cite to any evidence of bias on the part of Dr. Lorber. Nor does plaintiff point to any legal authority mandating that the ALJ give either greater or lesser weight to the opinion of a medical expert based on his or her previous work experiences. Plaintiff was represented by counsel at the ALJ hearing and counsel was given the opportunity to cross-examine Dr. Lorber. (Tr. 409-412). Counsel did not challenge Dr. Lorber's qualifications or any possible biases he may have held. The ALJ did not err in this regard.

Second, plaintiff contends the medical advisor improperly based his RFC opinion "in part on his own background and experience (Tr. 411), a standard which is not listed under 20 C.F.R. 404.1527(d) or (f)." (Doc. 6 at 3). Dr. Lorber testified in response to questioning by plaintiff's counsel that in his experience as an orthopedic surgeon who has treated thousands of people over a 30 to 40 year period, people with significant back pain do not even occasionally engage in the types of activities plaintiff engaged in, such as going hunting and operating a riding lawn mower. (Tr. 411).

Dr. Lorber's testimony does not violate the Social Security regulations. Sections 404.1527(d) and (f)[2] govern how an *ALJ* should weigh medical opinion evidence, and does not limit or otherwise regulate the testimony of a medical advisor at an ALJ hearing. Moreover, a

---

[1]Counsel for plaintiff at the ALJ hearing had no objection to Dr. Lorber testifying as a medical expert. (Tr. 398).

[2]Sections 404.1527(d) provides that the weight accorded to medical opinions by an ALJ depends on factors such as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the physician, the opinion's supportability by the evidence and its consistency with the record as a whole. Section 404.1527(f) provides that the opinions of medical experts are weighed using these same factors.

9

medical doctor necessarily relies on his or her own education, background, and experience in evaluating a patient's symptoms and complaints and when forming a medical opinion on an individual's limitations. Plaintiff has provided no legal authority for his argument to the contrary.

Third, plaintiff contends the ALJ erred by giving the most weight to Dr. Lorber's opinion when Dr. Lorber "was basing his residual functional capacity on isolated activities which [plaintiff] was only able to do for a few months when his pain level was low, at a level of 3-4 (Tr. 411)." (Doc. 6 at 3). Plaintiff points out that after his May 2004 back surgery, he was in a back brace for three months. (Tr. 266). On the advise of Dr. Kahn, his treating orthopedic surgeon, plaintiff walked for exercise and by December 2004 he was walking three to four miles per day. (Tr. 225). By the fall of 2004, plaintiff's pain level was low (Tr. 225), and the record shows plaintiff hunted in November and December of 2004, and January of 2005. (Tr. 232, 234, 297). In January, February and March of 2005, plaintiff's was treated for back pain with steroid injections to his lower back. (Tr. 297, 351, 358, 364). Plaintiff cites to Dr. Kahn's records in April 2005 noting that plaintiff "continues to have pain that he cannot live with." (Tr. 297). In June 2005, Dr. Kahn recommended a second law back surgery–a fusion from the thoracic spine to the sacrum. (Tr. 296). Plaintiff argues that both Dr. Lorber and the ALJ isolated certain parts of the record and failed to consider the subsequent evidence of the worsening of his low back condition in assessing plaintiff's RFC. (Doc. 6 at 5).

The Court disagrees. The ALJ accurately summarized Dr. Lorber's testimony as follows:

> Dr. Arthur Lorber, an orthopedic surgeon, testified as a Medical Expert at the second hearing in April 2006 by telephone conference call. He reviewed the record. He said that the original MRI findings in April 2003 showed only mild

> degenerative disc disease between the L2 and L5 levels, while a May 2003 EMG
> was normal. However, in March 2004, another MRI showed a herniated disc at
> L5/S1 impinging on a nerve root (see Exhibit 8F, page 1). Claimant consequently
> had fusion surgery at the L4/5 and L5/S1 levels in May 2004 (see Exhibit 11F).
> The record reflected that claimant was hunting five months after that surgery (see
> Exhibit 17F, page 2). A CT scan in January 2005 showed routine post operative
> changes (see Exhibit 14F, page 2). A June 2005 discogram showed signs of some
> minimal level of pain at the L3 level (see Exhibit 16F, pages 4-5).
>
> Dr. Lorber also noted that Dr. Kahn, claimant's surgeon, did recommend
> extending the fusion up to the T12 level in June 2005 (see Exhibit 17F). Dr.
> Lewis, on the other hand, only recommended fusion up to the L2 level after
> examining claimant in December 2005 (see Exhibit 20F). Neurological findings
> were normal during Dr. Lewis' examination. X-rays showed no loosening of the
> fixation devices from the previous surgery, and also revealed that the prior fusion
> was solid. Dr. Lorber further noted that during the examination by Dr.
> Koppenhoefer for claimant's counsel in January 2006, neurological findings were
> normal, and only mechanical back pain was diagnosed.
>
> Dr. Lorber then testified that he disagreed with Dr. Ron Koppenhoefer's opinion
> . . . that claimant's back condition equaled the requirements of Listing 1.04A.
> While claimant still had a significant back problem, there was no evidence of
> neurological deficits, and he noted that Dr. Koppenhoefer had in fact
> recommended occasional lifting up to twenty pounds despite his opinion of
> medical equivalency. Further, claimant had demonstrated the ability to engage in
> a significant level of activities. He stated that based on his experience in
> performing numerous back surgeries, someone who was experiencing a high level
> of back pain normally did not engage in activities like hunting and operating
> riding lawn mowers, even on an occasional basis.

(Tr. 21).

A review of the record indicates that neither Dr. Lorber nor the ALJ ignored the worsening of plaintiff's back condition after January 2005 or isolated parts of the record in determining plaintiff's RFC. The record shows that Dr. Lorber considered all of the pertinent medical evidence over the relevant time period in conjunction with plaintiff's testimony of his activities. (Tr. 406-409). Dr. Lorber specifically addressed Dr. Kahn's recommendation for a second surgery, but also noted that the January 2005 CT scan revealed nothing more than routine

11

post-operative changes; that the June 2005 discogram revealed only a minimal response at L3-4 with some pain; that December 2005 and January 2006 examinations showed normal neurological findings; and that in January 2006 plaintiff was diagnosed with mechanical back pain. (Tr. 407-408). Dr. Lorber also considered plaintiff's activities, including hunting and operating a riding lawn mower, which in his opinion indicated a level of functioning greater than suggested by plaintiff. Contrary to plaintiff's argument that plaintiff "only hunted a few times" in November and December 2004 and "possibly in January 2005" (Doc. 6 at 4), plaintiff testified that he last went hunting in the fall of 2005 on the average of once a week. (Tr. 424).

In assessing plaintiff's RFC, the ALJ gave the most weight to and relied primarily on Dr. Lorber's opinion concerning plaintiff's limitations. (Tr. 28). The ALJ explained that given Dr. Lorber's specialty in orthopedics, Dr. Lorber's opinion on plaintiff's functioning was entitled to greater weight than that of Dr. Koppenhoefer, a physical medicine specialist. (Tr. 28). The ALJ reasonably determined that Dr. Lorber's assessment was more consistent with the post-surgery MRI findings and neurological findings, plaintiff's self-described activities of daily living, and the opinions of the state agency doctors. (Tr. 28). The ALJ also considered and incorporated the lifting restrictions imposed by Drs. Liepack and Koppenhoefer (Tr. 26, 197, 376), and the need to alternate between sitting and standing as recommended by Drs. Lorber and Koppenhoefer (Tr. 26, 376, 409) in assessing plaintiff's RFC. Based on the record as a whole, the ALJ's decision to give the most weight to the opinion of Dr. Lorber is supported by substantial evidence and was not in error.

Plaintiff's second assignment of error asserts that the ALJ failed to consider two separate closed periods of disability. Disability benefits may be awarded for a closed period. In *Myers v.*

12

*Richardson*, 471 F.2d 1265 (6th Cir. 1972), the Sixth Circuit held that while "[t]he Act itself does not provide for a closed period of benefits . . . we think it clear that such a closed period of benefits may be awarded." *Id.* at 1267. A claimant who meets the twelve-month durational requirement of 42 U.S.C. § 423(d)(1)(A) may be entitled to benefits from the time his disability commences until such time as the disability ceases. *Lang v. Secretary of Health and Human Services*, 875 F.2d 865, 1989 W.L. 40188, **2 (6th Cir. 1989).

The first period for which plaintiff seeks a closed period of disability is from his alleged onset date of March 10, 2003 (Tr. 69) through August 2004, the period immediately following his May 2004 back surgery during which plaintiff wore a back brace. The second period for which plaintiff seeks a closed period of disability is from January 2005, when his low back pain became worse and required epidural steroid injections (Tr. 346), through the date of the ALJ's decision.

In this case, the ALJ did not specifically make a finding regarding whether plaintiff's impairments entitle him to a closed period of disability benefits. Nevertheless, it is clear from the ALJ's decision that he fully considered plaintiff's condition both before and after his May 2004 back surgery.

With respect to the first closed period, the ALJ summarized the evidence concerning plaintiff's back impairment (Tr. 20-24) and specifically noted several objective tests from 2003 which showed either normal or only minimal findings. Following his fall in March 2003 during which plaintiff injured his back, x-rays showed no acute abnormalities. (Tr. 21, 118). An MRI in April 2003 showed only mild degenerative disc disease with no evidence of disc herniation or spinal stenosis (Tr. 21, 120), and a May 2003 EMG was normal. (Tr. 20, 21, 134-35). In mid-

13

2003, plaintiff received three epidural injections (Tr. 146, 154, 162) and physical therapy and home strengthening exercises to improve his trunk and hip mobility and strength. (Tr. 21, 125-28). It was not until a March 2004 MRI of the lumbar spine showed a broad based disc protrusion with nerve root impingement that the decision was made to perform surgery. (Tr. 175, 193-95). Plaintiff then underwent lumbar fusion surgery in May 2004. (Tr. 186-190).

There is no evidence that any physician placed work-related restrictions on plaintiff greater than those set forth in the ALJ's RFC assessment for any twelve-month time period between plaintiff's alleged onset date and the August 2004 date plaintiff back brace was removed. The lack of physical restrictions by a physician is evidence supporting a finding of non-disability for this period. *See Maher v. Secretary of Health and Human Servs.*, 898 F.2d 1106, 1109 (6th Cir. 1989) (per curiam) (citing *Nunn v. Bowen*, 828 F.2d 1140, 1145 (6th Cir.1987)). Plaintiff's claim for a closed period of disability from March 2003 through August 2004 is not supported given the lack of objective findings and conservative treatment throughout 2003, and a lack of physician-imposed restrictions supporting a disabling condition. The substantial evidence of record does not show plaintiff suffered from a disabling condition for a twelve month period prior to August 2004 and the ALJ did not err in failing to award a closed period of disability.

With respect to the second closed period, from January 2005 through the date of the ALJ's decision, the ALJ in fact addressed and considered the medical findings subsequent to January 2005 as discussed above in connection with plaintiff's first assignment of error. *See supra* at pp. 9-11. Although Dr. Kahn recommended fusion surgery from the thoracic spine to the sacrum in June 2005 with a nine-month recovery period, Dr. Lewis suggested "the

14

possibility" of further surgery at L3-L4 and L2-L3. (Tr. 371). There are no other records from Drs. Kahn or Lewis after these dates indicating plaintiff received any further treatment from these doctors. Dr. Lorber acknowledged that Dr. Kahn recommended a second surgery, but given Dr. Lewis's opinion, the 2005 CT scan and discogram results, the normal neurological findings in December 2005 and January 2006, Dr. Koppenhoefer's 2006 diagnosis of mechanical back pain, and the other evidence reviewed (Tr. 406-410), Dr. Lorber opined plaintiff was nevertheless able to perform a range of work activities. The ALJ's reliance on Dr. Lorber's opinion is substantially supported by the record and, when viewed in conjunction with the post-surgery objective medical findings, the ALJ did not err in determining plaintiff was not disabled for the entire relevant time period, including the closed period requested by plaintiff.

To the extent plaintiff contends the ALJ erred in finding his testimony not credible, plaintiff's third assignment is without merit. Plaintiff argues that the ALJ's reliance on plaintiff's activities from August 2004 to January 2005, at a time when plaintiff's pain level was low and he was able to hunt and mow the lawn, is misplaced and does not accurately reflect plaintiff's functioning for the entire period for which he is claiming disability. (Doc. 6 at 6). Plaintiff also alleges the ALJ erred when he failed to consider factors such as plaintiff's fusion surgery in May 2004, a second recommended surgery, strong pain medication, and restricted activities for periods other than August 2004 to January 2005 in evaluating plaintiff's pain and credibility.

Contrary to plaintiff's argument, the ALJ considered the regulatory factors in assessing plaintiff's credibility for the relevant time period. *See* 20 C.F.R. § 404.1529. The ALJ noted that physical therapy records showed good strength with increased forward flexion and range of

15

motion despite reports of pain and that plaintiff's reports of pain typically corresponded with flare-ups after activities such as shoveling snow or hunting. (Tr. 28, 208, 215, 231, 234, 235). Physical therapy was discontinued in February 2005 because plaintiff met his therapy goals and was "independent in a home exercise program." (Tr. 208). The ALJ also noted that plaintiff performed many household cleaning chores, shopped for his mother and himself, mowed a large yard with a riding mower, got a full night of sleep, and fished during the entire claimed period of disability. (Tr. 28, 421-424). At the February 2006 hearing, plaintiff also testified that he went hunting once a week in the fall of 2005–a time after Dr. Kahn's recommended second surgery. (Tr. 424). The ALJ did not ignore the recommendation for a second surgery, but noted that plaintiff himself made the decision to delay any surgery until after his daughter's October 2006 wedding. (Tr. 20, 401-402). Plaintiff's decision to forego recommended treatment detracted from his allegations of "pain he could not live with." (Doc. 6 at 6, citing Tr. 297). The ALJ also discussed plaintiff's medications (Tr. 19) and noted there was no evidence of significant side effects. (Tr. 29). Giving due deference to the ALJ in light of his opportunity to observe plaintiff's demeanor at the hearings, *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001); *Kirk,* 667 F.2d at 538, the Court determines that the ALJ's credibility finding is substantially supported by the record evidence.

Finally, plaintiff contends the ALJ erred by relying on a hypothetical question to the vocational expert that did not account for Dr. Koppenhoefer's opinion that plaintiff would have four "bad days" per month resulting in an inability to work. (Tr. 376, 436). Plaintiff alleges that Dr. Koppenhoefer performs examinations for the Commissioner and, as a result, "is entitled to significant weight." (Doc. 6 at 7).

Plaintiff's fourth assignment of error is not well-taken. In assessing the weight to accord Dr. Koppenhoefer's opinion, the ALJ noted that Dr. Koppenhoefer is not a treating doctor, but a one-time examining physician. (Tr. 28). Although Dr. Koppenhoefer regularly performs evaluations for the Social Security Administration as acknowledged by the ALJ (Tr. 28), plaintiff has cited to no legal authority mandating any special deference be given to a physician's opinion on this basis. The ALJ reasonably declined to give greater weight to Dr. Koppenhoefer's opinion over that of Dr. Lorber, the medical advisor, given Dr. Lorber's greater medical expertise as an orthopedic surgeon in comparison to Dr. Koppenhoefer, a physical medicine specialist. (Tr. 28). The ALJ also noted that Dr. Lorber's opinion was more consistent with the post surgical MRI and neurological findings and plaintiff's daily activities, and therefore was entitled to more weight. (Tr. 28). The ALJ's decision in this regard is supported by substantial evidence and should be affirmed.

### IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this case be dismissed from the docket of this Court.

Date: 1/19/05

Timothy S. Hogan
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

GREGORY WELLS,
Plaintiff

vs

COMMISSIONER OF
SOCIAL SECURITY,
Defendant

Case No. 1:08-cv-148
(Beckwith, J.; Hogan, M.J.)

NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fifteen (15) days after being served with this Report and Recommendation. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen (13) days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail, and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation are based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).