```
                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF OHIO
                          WESTERN DIVISION
```

Gregory Wells,                          :   Case No. 1:08-cv-148
                                        :
    Plaintiff,                          :
                                        :
vs.                                     :
                                        :
Commissioner of Social Security,        :
                                        :
    Defendant.                          :

## ORDER

This matter is before the Court on the Magistrate Judge's Report and Recommendation of November 19, 2008 (Doc. 10), and the Plaintiff's objections to that Report and Recommendation (Doc. 11). The Magistrate Judge recommended that the decision of the Administrative Law Judge be affirmed, because that decision is supported by substantial evidence in the record.

## FACTUAL BACKGROUND

Plaintiff Gregory Wells worked for many years as a truck driver. He is a high school graduate. He slipped and fell on ice in March 2003, and complained of lower back pain with increasing spasms and numbness spreading to his legs. MRIs in March and April 2003 showed no acute fractures or disc herniations, but reflected degenerative changes. (TR 118, 120) Wells had physical therapy in 2003, and he was told that it would be helpful to exercise more, but do no weight-bearing exercise. In October 2003, an office visit note states that he was painting

-1-

windows, which had increased his pain and his resulting use of Vicodin. (TR 130)

By March 2004, however, an MRI established disc protrusion at L5-S1, and Wells had fusion surgery at L4-5 and L-5-S1 in May. He was in a brace for about four months after surgery. By June, he told his doctor that he was doing quite well, he was released to drive, and he was told he must start walking regularly. (TR 191) His surgeon, Dr. Kahn, approved him for three months of temporary total disability in October 2004. (TR 298) Wells engaged in physical therapy, and reported that he went hunting approximately once a week with a friend. He also told his physical therapist that he helped put up a tree stand, that he fell in the woods on one occasion, and that he and his friend tracked a deer for several hours, staying out late in the evening and returning the next morning. (TR 228-246)

In a January 20, 2005 follow-up visit with Dr. Kahn, Wells reported that he had been out with his friend hunting for perhaps three or four hours, which required him to bend over off and on and which increased his pain. When it subsided, he shoveled some snow which also increased his pain. Dr. Kahn ordered an MRI, which showed a minimal disc bulge at L5-S1 that did not impinge the nerve root. A month later, his physical therapy was discontinued and Wells was put on a home program, as he was doing well. Wells also told the therapist that a TENS unit he had been

given to try "abolished" his pain. (TR 220)

But in April, Wells reported to Dr. Kahn that he still had pain that "he cannot live with." (TR 297) Epidural injections did not help very much, and Kahn ordered a CT scan. Based on those tests, which showed some disc bulge at L2-3 and an annular tear, Kahn concluded that Wells had increasing degenerative changes, and that Wells should have fusion from T12 all the way to the sacrum. This would entail another 9 months of recovery, and would require grafting. (TR 296)

Wells obtained a second opinion concerning Kahn's recommendation from Dr. Paul at Riverhills Healthcare on December 28, 2005. (TR 368-371) Dr. Paul recommended a more conservative approach involving fusion at L2-L3 and L3-L4.

On January 6, 2006, Wells was examined by Dr. Koppenhoefer for an opinion on Wells' disability. (TR 372-376) Koppenhoefer stated that Wells' significant limitations are equal to Listing 1.04, that his ongoing pain interferes with his ability concentrate on simple work tasks, and that the impairments are both permanent and progressive. He believed that Wells could sit intermittently throughout the day, but questioned whether he could sit throughout an 8-hour work day. He should not bend, stoop or lift anything heavy, and his lifting should be limited to occasionally lifting 20 pounds or less. Wells would rarely be able to twist, stoop, crouch or squat; climbing steps would be

only occasional, and climbing ladders should be avoided. Reaching over his head would be limited due to the strain it would put on his back. Dr. Koppenhoefer also opined that Wells would have "good or bad days," with the bad days far in excess of four days per month.

The Administrative Law Judge conducted two hearings on Wells' application for benefits, on February 14 and April 2, 2006. At the first, the ALJ heard testimony from Wells and from a vocational expert, who testified that Wells could perform available jobs at the sedentary and light exertion levels, including small parts assembler, charge account clerk, lens inserter, and toy stuffer. The expert, Ms. Ewers, admitted that the DOT job listings do not address the availability of an alternate sit/stand option, but that in her personal experience in job placement, the jobs she mentioned would permit that limitation.

The ALJ conducted a second hearing after deciding to request a medical expert to review Wells' case. That expert, Dr. Lorber, reviewed Wells' file and testified by telephone at the second hearing. Lorber believes that Wells' impairments do not meet Listing 1.04, and that his self-reported activity level is inconsistent with total disability. Lorber stated that he has operated on thousands of patients for back fusions, and that those who complain of significant back pain simply do not engage

in the types of activities Wells described - hunting on a fairly regular basis, walking in the woods, and mowing his lawn. Lorber believed this to be the case even though Wells testified he had to take breaks while doing these activities. (TR 406-413)

The ALJ issued his decision on August 16, 2006, rejecting Wells' application. (TR 18-32) He found that Wells has a severe impairment, lumbar degenerative disc disease, which substantially reduces his ability to perform work-related functions. However, the ALJ concluded that Wells' impairment did not meet or equal Listing 1.04, rejecting Dr. Koppenhoefer's opinion and finding Lorber's conclusion to be consistent with the medical evidence. He then determined Wells' residual functional capacity, which included significant restrictions on lifting and various types of movements, and required alternate sitting and standing positions throughout the day. (TR 25)

The ALJ also found that Wells' subjective pain complaints were inconsistent with his reported activities, and noted that his reports of increased pain normally coincided with his engaging in more vigorous activities like shoveling snow or walking in the woods. Based upon the RFC, the ALJ found there were a substantial number of available jobs at a sedentary exertion level, based on the vocational expert's testimony.

The Appeals Council denied Wells' request to review the ALJ's decision (AR 06), and Wells timely filed his complaint in

this court.  (Doc. 1)

**DISCUSSION**

Under 42 U.S.C. §405(g), this Court reviews the Commissioner's decision by determining whether the record as a whole contains substantial evidence to support that decision. "Substantial evidence means more than a mere scintilla of evidence, such as evidence a reasonable mind might accept as adequate to support a conclusion." LeMaster v. Secretary of Health and Human Serv., 802 F.2d 839, 840 (6th Cir. 1986) (internal citation omitted).  The evidence must do more than create a suspicion of the existence of the fact to be established.  Rather, the evidence must be enough to withstand a motion for a directed verdict when the conclusion sought to be drawn from that evidence is one of fact for the jury.  Id.

If the ALJ's decision is supported by substantial evidence, the Court must affirm that decision even if it would have arrived at a different conclusion based on the same evidence. Elkins v. Secretary of Health and Human Serv., 658 F.2d 437, 438 (6th Cir. 1981).  The district court reviews de novo a magistrate judge's report and recommendation regarding Social Security benefits claims.  Ivy v. Secretary of Health & Human Serv., 976 F.2d 288, 289-90 (6th Cir. 1992).

Wells argues that the ALJ made several errors in concluding that Wells was not disabled.  The Magistrate Judge rejected all

of his arguments, and each is discussed in turn.

Dr. Lorber's Opinion.

Wells raises several objections concerning Dr. Lorber, arguing that the ALJ improperly adopted Lorber's opinion and rejected those from Wells' treating physicians. He argues that Lorber has a bias against claimants, as the bulk of his work is for defendants and agencies. He claims that Lorber too narrowly focused on Wells' admissions that he went hunting several times in the fall of 2004, and that he mowed his lawn. Lorber failed to address Dr. Kahn's January 2005 recommendation that Wells undergo significant fusion surgery that would require nine months of extensive recovery effort. He also cites the June 2005 CT scan, showing an annular tear and possible disc bulge at L2-L3, which he contends is objective medical evidence supporting his complaints that Lorber failed to account for.

The Magistrate Judge correctly noted that Wells offers no evidence of Lorber's **actual** bias against Wells; the fact that Lorber frequently offers opinions on behalf of the defense or the SSA does not by itself establish a genuine basis upon which to challenge his objectivity. The ALJ did not err by seeking an opinion from Lorber, or by failing to discount his opinion because of his allegedly biased "orientation" against claimants.

Wells contends that Lorber gave too much weight to Wells' hunting, fishing, and mowing activities, and that Lorber's own

experience with fusion surgery patients is an improper basis for an expert's opinion under 20 C.F.R. §404.1527(d) or (f).  The Magistrate Judge rejected this argument, noting that the cited regulation does not restrict a medical expert, but provides instructions to the ALJ on the weight properly accorded to medical opinions.  In his objections, Wells argues that Lorber was overstating the amount of activity Wells was able to engage in. (Doc. 11, p. 4)  The record refutes this argument; Wells consistently reported to his physical therapist in the fall and early winter of 2005 that he was regularly hunting.  (TR 228-246) While Wells testified that he always went with a friend who did the heavy lifting, he was able to hunt for several hours on consecutive days, and described being in a bent position for an extended time.  Wells also testified at the ALJ hearing that he went hunting "last fall" almost once a week (TR 424); since this testimony was in the spring of 2006, it is logical to assume that Wells was referring to the fall of 2005.  Lorber was entitled to rely upon Wells' own testimony in reaching his conclusions.

Wells also argues that Lorber failed to account for his condition in 2005, especially the June 2005 CT scans and Dr. Kahn's recommendation for aggressive fusion surgery.  The Magistrate Judge quoted the ALJ's decision, which accurately summarized Lorber's testimony.  Lorber recognized Kahn's recommendation and the CT scan, but also noted that Dr. Lewis

-8-

recommended far more conservative surgery six months after Kahn. Moreover, Lewis' neurological findings in December 2005 were normal; while Lewis described the prior discogram as revealing an "abnormal disc at L3-4," that area did not reproduce Wells' pain. (TR 371)  And Dr. Koppenhoefer noted the June 2005 scan results, but believed that his current pain was "mechanical in nature and is probably related to degenerative/aging changes."  (AR 375) Lorber also correctly noted that Wells was not consistently treating with a physician for his back problems, and had postponed having any additional back surgery largely for personal reasons.  The Court finds no error in Lorber's reliance on this evidence.

Wells also contends that the ALJ erred by rejecting Dr. Koppenhoefer's opinion, as he had actually examined Wells and had reached an opinion contrary to Lorber's.  A Social Security regulation states that a treating physician's opinion is entitled to controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. §404.1527(d)(2).  The ALJ did not disregard Wells' treating physicians.  His surgeon, Dr. Kahn, recommended that Wells have additional surgery, but this recommendation does not equate to an opinion that Wells is disabled under the Social Security Act.  Dr. Kahn left the ultimate decision up to Wells, who elected not to have any

additional surgery up through the time of the ALJ hearing. And Kahn did not offer an opinion on Wells' extent of disability after the three-month period of temporary total disability that Kahn approved in October 2004.

Dr. Koppenhoefer is not a "treating" physician; he saw Wells once for a consultation regarding his SSA application. While Koppenhoefer physically examined Wells, his report states that his physical findings were rather unremarkable, and showed no neurological deficits. The only positive findings noted were a trunk lean (which was probably related to scoliosis) and some left-side back pain on straight leg raising. (AR 373) The ALJ gave "no weight" to Koppenhoefer's opinion that Wells met Listing 1.04, because it was inconsistent with his additional opinions that Wells had job limitations that were consistent with light or sedentary job classifications. These included limits on walking and standing, periods of intermittent sitting, and limited lifting. The ALJ also noted that Koppenhoefer's opinion on Listing 1.04 was inconsistent with Wells' own testimony about his activity level. The Court finds no error in the ALJ's analysis of whether Wells met Listing 1.04. That listing includes degenerative disc disease, but requires far more objective medical evidence of disabling pain than the record reveals here.

Dr. Koppenhoefer also stated that Wells would "have good or bad days, with bad days far in excess of 4 days per month." (TR

376)  The ALJ did not expressly address this statement.  However, the statement is vague as to what he meant by "good and bad days."  Koppenhoefer did not say that Wells would be unable to work four or more days every month.

The ALJ did address Dr. Swanson's treatment of Wells, as Swanson was Wells' primary physician for many years.  Swanson did not opine that Wells is disabled.  In his assessment before Wells had surgery in May 2004, he noted nonspecific limitations on Wells' ability to walk, sit, stand, or lift heavy weights "when [Wells] is having pain."  (TR 145)  In August 2005, Wells told Swanson he was "considering" getting a second opinion on the need for additional fusion surgery.  The most recent record from Swanson is October 2005, when he notes that he and Wells discussed "back pain options." (TR 299-300)  This evidence does not constitute an opinion that Wells was disabled within the meaning of the Social Security Act.

The ALJ also gave greater weight to Lorber in part because he is an orthopedic surgeon "with a long record of service to the Administration as a Medical Expert."  (TR 25)  Neither Swanson nor Koppenhoefer specialize in orthopedics.

The Court has carefully reviewed Wells' arguments concerning the medical experts, and finds that the ALJ did not err in his reliance upon Lorber's opinion concerning Listing 1.04, or his analysis of Wells' job limitations and disability.

Subjective Complaints

Wells objects to the ALJ's failure to credit his complaints of back pain, contending that Lorber and the ALJ overstated the extent of his activities, and failed to consider the effects of narcotic pain medications he routinely takes. The ALJ found, based on Wells' testimony and his medical records, that his subjective allegations are not credible to the extent they describe disability under the Act. (TR 29)

It is proper for the ALJ to consider a claimant's credibility, and to evaluate his subjective complaints of pain against the objective medical data. 20 C.F.R. §416.929(a) sets out the test for that evaluation. Once a medical condition is found to exist (which is not disputed here), the ALJ must consider (1) whether objective medical evidence confirms the severity of pain, or (2) whether the condition can reasonably be expected to produce the alleged disabling pain. "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997). The ALJ's credibility assessment, if properly explained and supported, is entitled to deference from this Court.

The ALJ did not conclude that Wells lacked all credibility. He did not find that Wells was unduly exaggerating his symptoms,

-12-

and no one has suggested malingering.  What the ALJ found was that Wells' description of his symptoms was not credible **to the extent** that Wells believed he was disabled within the meaning of the Social Security Act.  (AR 29, emphasis added)   The Magistrate Judge found no error in the ALJ's analysis, a conclusion with which this Court agrees.

<u>The ALJ's Failure to Award Closed Periods of Disability</u>

Wells contends the ALJ erred in failing to award him disability benefits for discrete periods from March 2003 through the fall of 2004, and/or from January 2005 forward.  The ALJ did not expressly reject this claim, but he found that Wells was not under a disability "at any time" through the date of his decision.  (AR 31)  The Magistrate Judge concluded that there was no evidence that Wells was continuously disabled for a period of twelve months, as is required by 42 U.S.C. §423(d)(1)(A) in order to received closed period benefits.  See, e.g., <u>Howse v. Heckler</u>, 782 F.2d 626 (6th Cir. 1986), recognizing that a closed period of benefits may be awarded from the onset of disability through the date it ceases.

Wells contends he was disabled from his alleged onset date of March 10, 2003, through August 2004 when his back brace was removed.  It appears that Wells did not return to working as a truck driver after the March 2003 fall, but there is scant evidence in the record documenting a disability defined by the

Social Security Act.  The 2003 objective tests showed essentially normal conditions, noting mild degenerative disc disease.  Wells did receive epidural injections and physical therapy, but there is no statement from any physician that he was unable to work.  The March 2004 MRI documented a disc protrusion, and surgery followed in May.  At best, a closed period would start no earlier than March 2004.  However, again, there is no evidence that any physician found Wells disabled for a continuous twelve-month period after his diagnosis or his surgery.  Dr. Kahn approved him for three months of temporary total disability in October 2004, but there is no record of any further disability certification after that three-month period.  Wells' physical therapy was discontinued in February 2005 as he was doing well.  The evidence does not support a closed period of benefits during this time.

Wells also argues he is entitled to closed benefits from January 2005 forward, as his back pain had again increased by that time.  He cites Kahn's June 2005 recommendation, which would have entailed a nine-month recovery period.  But Wells did not have that surgery, and Lewis recommended a more conservative approach six months later.  The evidence in the record through January 2006 simply fails to support Wells' claim that he was continuously disabled for that twelve-month period.  The Court concludes that the ALJ did not err in failing to award closed period benefits for either of the time periods in question.

Vocational Expert's Opinion on Available Jobs

    Wells argues that the ALJ erred in questioning the vocational expert with an incomplete hypothetical concerning Wells' job limitations.  Wells argues that the ALJ failed to include Dr. Koppenhoefer's statement that Wells would have "good and bad days."  Wells contends this means that he would regularly miss over four days of work a month.  The vocational expert admitted that missing that much work would disqualify Wells from the available jobs she identified.  (AR 436)

    As discussed above, Dr. Koppenhoefer's statement about "good or bad days" is ambiguous, and does not amount to a medical opinion that Wells would in fact miss four or more days of work per month.  The Court has no doubt that individuals with degenerative disc disease have "good and bad" days, but that does not equate to substantial evidence that the "bad" days would require that individual to miss so much work that he would be found disabled.

    The ALJ correctly noted that at Step 5 of the required sequential analysis, the burden of coming forward with evidence shifts to the Commissioner, to show that there are jobs existing in significant numbers in the national economy that the claimant can perform, and which are consistent with the limitations found in the residual functional capacity analysis.  (AR 19)  The ALJ's RFC found that Wells lacks the capacity to: "(1) lift more than

10 pounds frequently or 20 pounds occasionally; (2) do any job that would not permit him to alternate sitting/standing positions at 30 minute intervals throughout the day; (3) do greater than occasional crouching, stooping below waist level, kneeling, or climbing of stairs; (4) crawl or climb ladders or scaffolds; or (5) work at unprotected heights, around moving machinery, or where his body would be exposed to significant vibration."  (AR 25)  These limitations, with the exception of the lifting, are consistent with Lorber's opinion, and are largely consistent with Koppenhoefer's descriptions of Wells' restrictions.  The vocational expert testified that there are 9,000 local jobs available that are classified as sedentary, and 18,000 light duty, that meet all of the ALJ's limitations.  (AR 434-435)

20 C.F.R. §404.1567 defines the physical exertion requirements for each job classification level.  "Light duty" includes the lifting restrictions found by the ALJ (occasionally 20 pounds, and frequently 10 pounds).  The definition also states that a light duty job may require "... a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  While it is not entirely certain that Wells would qualify for all light duty jobs, the Commissioner carried his burden of establishing the availability of a "significant" number of both light duty and sedentary jobs in the relevant market.  See, e.g., Hall v. Bowen,

837 F.2d 272, 275 (6th Cir. 1988), noting that there is no bright line between "significant" and "insignificant," and concluding that 1,350 jobs available is a "significant" number within the meaning of the statute.

The Court therefore rejects Wells' objections to the vocational expert testimony.

## CONCLUSION

For the reasons stated, Plaintiff's objections to the Magistrate Judge's Report and Recommendation are overruled. The Court adopts the Report and Recommendation. The Court affirms the decision of the Commissioner that Plaintiff is not entitled to an award of disability benefits.

SO ORDERED.

THIS CASE IS CLOSED.

DATED: March 10, 2009        s/Sandra S. Beckwith
                             Sandra S. Beckwith
                             Senior United States District Judge